*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re R. MARCKINI, Minor.

UNPUBLISHED
February 16, 2023

No. 362040
Kent Circuit Court
Family Division
LC No. 21-050802-NA

Before: SHAPIRO, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order terminating her parental rights to the minor child under MCL 712A.19b(3)(c)(*i*) and MCL 712A.19b(3)(j). We affirm.

Mother first argues that the trial court clearly erred by finding that clear and convincing evidence supported that the alleged statutory grounds were met. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). This Court reviews the trial court's determination for clear error. *Id*.; MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). The trial court need only establish one statutory ground by clear and convincing evidence to terminate parental rights. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

The trial court did not clearly err by finding that the statutory grounds for termination were established by clear and convincing evidence. MCR 3.977(K); *In re VanDalen*, 293 Mich at 139. The principal condition that led to adjudication was respondent's severe substance abuse. DHHS became involved with the family on May 14, 2021, when respondent was found unconscious from an overdose and half-naked with another individual in the front seat of her car with the almost one-year-old child in the backseat; the child was removed and placed with relatives pursuant to a "voluntary safety arrangement. "Unbeknownst to the relative and the foster care case manager, respondent apparently stayed in the garage at the relative's home and would sneak in, eat food,

and leave dishes throughout the house. As a result, the relative asked that the child be placed elsewhere, and he was moved to a foster care home nine months after the initial removal.[1]

Unfortunately, respondent continued to abuse methamphetamine throughout these proceedings and was incarcerated on drug charges in March 2022. While substance abuse was respondent's primary barrier to reunification, respondent's additional barriers included emotional/mental instability, lack of parenting skills and communication skills, as well as no housing or employment. The worker scheduled three psychological evaluations between June and November 2021 but respondent failed to attend. Respondent checked into Our Hope in-patient residential treatment but left after 7 days and failed to follow up on any other referrals for in-patient or out-patient treatment. Respondent refused random drug screens and any screens conducted at the irregularly attended visits revealed her continued use of illicit substances. Respondent reported struggling with anxiety and depression but did not follow through with referrals for mental health counseling. She also had no housing and no employment.

Respondent's case manager had difficulties communicating with her but would send messages on Facebook Messenger; through that platform, the case manager could tell that respondent read the messages but she rarely responded to them. The case manager provided respondent with gas cards to help her get to visits, but respondent stopped meeting with her case manager in August 2021, and she had her last visit with her son on October 21, 2021. She refused to come to the agency early as a means of ensuring she would be at the visits when the child was transported there. Even after she was incarcerated, she refused to meet with her case manager; a new case manager met with her twice in the weeks before the termination hearing, however. Respondent had just begun counseling in the jail and could not avail herself of the jail's sober living unit until after she was sentenced in September 2022, but the caseworker testified that respondent was scheduled to be released from jail at sentencing pursuant to the plea agreement.

At the termination hearing, both case managers testified that respondent made "zero" or almost no progress on her parent agency agreement and she did not acknowledge that her methamphetamine use impacted her children. Even though respondent anticipated being released three months after the termination hearing at her September 2022 sentencing, the worker testified that it would take more than an additional six months of sobriety and full participation in the parent agency agreement before respondent would be able to seek reunification with the child. Notably, when respondent did visit the child, the child was inconsolable for days after visits and did not sleep well. The case manager could only communicate with respondent via Facebook messenger and could see when respondent read the messages, but respondent rarely responded. Respondent never provided an address or phone number for the agency to reach her, and the case manager only found out about respondent's incarceration from another family member. Clear and convincing evidence established that respondent failed to address the barriers that existed at the outset of the

---

[1] Respondent's actions led to the relative's decision to ask for RM's removal from her home; respondent's concerns that the child was not subsequently placed with relatives or is not seeing his sibling (who is placed with another relative) have little to no bearing on the trial court's determination whether clear and convincing evidence exists under one of the statutory grounds for termination. MCL 712A.19b(3)(c)(i), (j).

case, that more than 182 days had elapsed since the initial dispositional order, that she failed to comply with the foster care agency's case service plan and that there was no reasonable expectation that the conditions would be rectified within a reasonable time given the child's age. See MCL 712A.19b(3)(c)(*i*).

Notably, RM was not yet one year old when placed outside his mother's care, and he was just over two years old at the time of the termination hearing. The language of the statute, "within a reasonable time given the child's age," indicates reasonableness is relative because a one year old who is in out-of-home care for a year is not similarly situated with a ten year old who is in care for a year. Child development and nurturing bonds established during those first years (versus the tenth year) are critical. Indeed, requiring RM to wait another nine to twelve months or more for respondent to address the barriers that led to adjudication would be unreasonable given his youth, length of time in care, and lack of contact with respondent.

Respondent also argues that the trial court impermissibly terminated her parental rights on the basis of her incarceration lasting less than a period of two years under MCL 712A.19b(3)(h). Three months before her termination hearing, respondent was incarcerated because of her methamphetamine addiction. She would continue to be incarcerated another three months after the termination hearing. The trial court did not, however, terminate her parental rights based on her incarceration. See *In re Mason*, 486 Mich 142; 782 NW2d 747 (2010). Instead, the trial court relied on the statutory grounds under MCL 712A.19b(3)(c)(*i*) and MCL 712A.19b(3)(j) for her conduct before and during incarceration. The trial court found that respondent had made no progress on her barriers during the nine months before she was incarcerated or during her incarceration. Further, the trial court found that she would not be able to rectify those barriers in a reasonable time after her release. "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). Further, the trial court did not clearly err when it found that there was a reasonable likelihood that the child would be harmed if he was returned to respondent. See MCL 712A.19b(3)(j).

Mother also argues that the trial court clearly erred by finding that a preponderance of the evidence supported that termination was in the child's best interests. We disagree.

After the trial court determines that at least one of the statutory grounds has been met, the trial court must also find by a preponderance of the evidence that termination is in the child's best interests before it can terminate parental rights. *In re Moss*, 301 Mich App at 90. This Court reviews the trial court's finding regarding the child's best interests for clear error. *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000).

The evidence established that termination of respondent's parental rights was in the child's best interests by a preponderance of the evidence. MCL 712A.19b(5); *In re Trejo*, 462 Mich at 356-357. Respondent had little bond with her child because he had been out of her care for a majority of his life, she had not visited RM in almost 8 months, she showed no ability to progress on any of her barriers, and this instability and lack of permanency affected her child's mental and emotional well-being. See In re *Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Visits, when they did occur, were chaotic and respondent needed parenting classes to help improve parenting techniques. RM was inconsolable after visits. While in care, RM was developmentally

on track and making strides with his club foot treatment. Waiting at least nine months minimum for respondent to establish sobriety and address her other barriers was too long for the child to continue in a state of flux. Instead, RM's placement with a foster family provided him with the stability, permanency, and finality he needed. See *In re Trejo*, 462 Mich at 356-357. Therefore, the trial court did not err by terminating respondent's parental rights to the child.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Anica Letica
/s/ Kathleen A. Feeney